UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN WALDRON,

    Plaintiff,

        v.

DONALD D. GAETZ, DARREN HATLEY, LT. DILDAY, LT. ASHBY, INTERNAL AFFAIRS C/O, LT. PARNELL, C/O LEE, DANNY HARTLINE, ILLINOIS DEPARTMENT OF CORRECTIONS, BARB MUELLER, ADMINISTRATIVE REVIEW BOARD, ILLINOIS DEPARTMENT OF CORRECTIONS DIRECTOR and C/O MARTIN,

    Defendants.

Case No. 11-cv-242-JPG-PMF

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 90) of Magistrate Judge Philip M. Frazier recommending that the Court grant the motion for summary judgment filed by defendants Ashby and Parnell (Doc. 64). Waldron has objected to the Report (Doc. 92), and the defendants have responded to that objection (Doc. 93).

**I.    Report and Recommendation Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    The Report and Objection**

The only remaining claim in this case is that defendants Ashby and Parnell violated

Waldron's procedural due process rights by issuing discipline without holding a hearing to consider Waldron's evidence and by reaching a decision not supported by at least some evidence. Waldron was subject to six months in "C" grade, six months in segregation and six months with a commissary restriction. In segregation, Waldron had few opportunities to exercise outdoors, had few opportunities to use the prison law library, lost his eligibility for a prison job and the pay that went with it, was subject to intense and disruptive cell searches that damaged some of his personal property, and suffered diminished future prospects for parole. He was also labeled as a weapons violator, which raised his classification and resulted in housing assignments to a high aggression cell house.

The Report found that the evidence did not show the disciplinary action Waldron suffered as a result of the disciplinary hearing amounted to an atypical and significant hardship in relation to the ordinary incidents of prison life, which is required to establish he had a liberty interest in being free from the discipline. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). Thus, no matter what process he received before the discipline, he could not prove a due process violation. The Report found that the only discipline that arguably gave rise to a liberty right was Waldron's confinement in segregation for six months, but that the conditions in segregation as described by Waldron were not harsh enough to constitute an atypical and significant hardship under *Sandin*. The Report compared Waldron's situation to *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005), where the plaintiffs were deprived of human contact and environmental stimuli and were disqualified from parole eligibility, and *Gillis v. Litscher*, 468 F.3d 488, 490-94 (7th Cir. 2006), where the plaintiff was deprived of bedding, clothing, human contact, and sensory stimulation. In both of those cases, the court found a deprivation of a liberty interest.

In his objection, Waldron faults the Report for failing to acknowledge the disciplinary decision was rendered without the appropriate process. He also faults the Report for failing to

find a liberty interest when the discipline could affect the duration of his confinement because it might impact a parole board decision if a parole system is reinstituted in Illinois. The defendants note that a parole system does not apply to Waldron because he was sentenced under the mandatory supervised release scheme.

**III.    Analysis**

After *de novo* review, the Court finds the Report is correct for the reasons stated therein. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999).   Without a protected interest, an inmate is not entitled to the procedural protections of *Wolff v. McDonnell*, 418 U.S. 539 (1974).   *See Sandin v. Conner*, 515 U.S. 472, 487 (1995). Waldron has no protected interest in avoiding the discipline at issue in this case.

"[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."   *Id.* at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 222 (1976)).   Special confinement will deprive a plaintiff of a liberty interest in the constitutional sense only where his punishment "exceed[s] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.   The first category comprises punishment that is "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime, and ha[s] 'stigmatizing consequences.'"   *Sandin*, 515 U.S. at 479 n.4 (quoting *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) (transfer from prison to mental hospital for treatment of mental illness), and citing *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)).   The second category – that more typical of prisoner § 1983 cases – comprises lengthy confinement and/or unusually harsh conditions.   *See Marion v. Columbia*

*Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (indefinite confinement without possibility of parole in cell with a solid metal door for 23 hours a day with a light on at all times, isolation from other inmates, and few opportunities for visitors)).

Waldron did not have a liberty interest in remaining out of segregation under the *Vitek* line of cases. The conditions he describes in segregation – few opportunities to exercise outdoors or to use the prison law library, no eligibility for a prison job, intense, disruptive and destructive cell searches, high aggression housing assignment – are not so unexpected in prisons that they qualitatively exceed characteristic punishments for prison inmates. Nor do they amount to an atypical and significant hardship under *Sandin* when imposed for only six months. Simply put, the changes in the conditions of Waldron's confinement brought about by his placement in segregation did not implicate a liberty interest.

Additionally, Waldron's punishment does not implicate a liberty interest because it will "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 487. It will, in fact, have no inevitable affect the length of his confinement. He is not subject to denial of parole because of his punishment because he is not incarcerated under a parole scheme, and it is pure speculation that Illinois will reinstitute a parole system that will affect Waldron. *See Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1996) (*per curiam*) (no due process protection where action "merely *might* affect the duration of the sentence"). Thus, there is no liberty interest implicated by the length of his sentence.

In sum, because Waldron had no liberty interest in remaining out of segregation for six months, the procedural requirements of *Wolff* need not be satisfied, and his procedural due process claim must fail.

Waldron also argues that he can prove a substantive due process claim in addition to the

4

procedural due process claim addressed above. The substantive due process aspect of the Fourteenth Amendment bars certain arbitrary, wrongful government action. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman,* 804 F.2d 421, 427 (7th Cir. 1986). However, in its initial review of this case, the Court did not find Waldron had pled a substantive due process claim in his complaint (Doc. 7). Rightly so, for Waldron did not allege any action that is so arbitrary and wrongful that a government cannot be allowed to do it or that "shock the conscience." *See Rochin v. California,* 342 U.S. 165, 172 (1952). There is no substantive due process claim involved in this case.

**IV.     Additional Matters**

By order dated June 23, 2011, defendant Hatley was dismissed from this action with prejudice (Doc. 7). However, that order did not make clear the rationale for dismissal as required under Rule 50 of the Circuit Rules of the U.S. Court of Appeals for the Seventh Circuit. Therefore, the Court will now elaborate.

The only allegation against Hatley is that he claimed to have found a homemade weapon between the mattress and frame of Waldron's bunk (Doc. 1, pp. 4, 6). Exhibits attached to the complaint also reflect that Hatley issued Waldron the disciplinary report for possessing the weapon (Doc. 1-1, p. 1) which was the basis for the disciplinary action discussed above. Waldron asserts that the weapon was not his. As noted above, Waldron was eventually convicted and punished for the offense.

These allegations regarding Hatley do not state a constitutional violation. Furthermore, because he lost no good time and there are no allegations implicating a liberty interest, Waldron has not stated a due process claim stemming from the disciplinary report. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995) (due process is only implicated if a liberty interest is lost); *Hoskins v.*

5

*Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (demotion to C-Grade does not implicate a liberty interest); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (the length of time in segregation must be substantial and the record must reveal the conditions in segregation are unusually harsh). Consequently, this claim and defendant Hatley are dismissed with prejudice, as Plaintiff has failed to state a claim against Hatley upon which relief can be granted.

## V.   Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** the Report in its entirety (Doc. 90);

- **GRANTS** the motion for summary judgment filed by defendants Ashby and Parnell (Doc. 64); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: August 12, 2013**

                s/J. Phil Gilbert
                **J. PHIL GILBERT**
                **DISTRICT JUDGE**